IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| HILDA BRUCKER; JEFFERY THORNTON; JANICE CRAIG; and BYRON BILLINGLSEY, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 1:18-cv-02375-RWS |
| | ) | |
| CITY OF DORAVILLE, a Georgia municipal corporation, | ) ) | |
| | ) | |
| Defendant. | ) | |

## **DEFENDANT CITY OF DORAVILLE'S BRIEF IN REPLY TO PLAINTIFFS' OPPOSITION TO ITS MOTION TO DISMISS**

The present brief is offered on behalf of the defendant herein, the City of Doraville, Georgia, in further support of its motion to dismiss filed pursuant to Rules 12(b)(1) and 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE and in reply to the responsive brief submitted by plaintiffs herein in opposition thereto. Plaintiffs' responsive brief offers little more than a rote recitation of the conclusory allegations asserted in the complaint, and presents no logical reasoning or legal arguments to withstand dismissal pursuant to Doraville's present motion for lack of subject matter jurisdiction and failure to state a claim.

## I.   <u>INTRODUCTION</u>

In the above-captioned federal action, plaintiffs exclusively challenge and seek to enjoin Doraville's policies and practices related to the manner by which its city council prepares and balances the city's annual budget to account for revenue generated by municipal court fines and fees. According to plaintiffs, "municipalities that budget to receive fines and forfeitures revenue" are "using, or *appearing to use*, their municipal courts, prosecutors, police, and code enforcement officers to generate revenue."[1]   Thus, plaintiffs allege that Doraville's challenged budgetary policies, in and of themselves, cause individual non-party government actors — Doraville code enforcement officers, law enforcement officers, prosecutors, and municipal court judges — to unconstitutionally ticket, prosecute, convict, and ultimately impose sentences requiring plaintiffs and/or any other member of the Doraville public to pay monetary fines and fees for violating valid local ordinances and/or state laws "in order to generate revenue" and meet the city council's budgetary expectations.[2]

---

[1] (Doc. 1, ¶ 6) (emphasis added).

[2] (Doc. 20, pp. 10, 16) (citing Compl. ¶¶ 155–78) ("Plaintiffs' argument on the merits is that Doraville relies upon code and traffic enforcement fines to balance its budget, and therefore there is an impermissible bias in the adjudication and prosecution of those violations.").

In fact, the budgeting policies and practices challenged by plaintiffs in their complaint are expressly governed by Georgia law. Thus, all fines and fees imposed in municipal court for state law traffic offenses, following payment of costs, "shall be paid into the treasury of the municipality where the court is located" by the fifteenth of each month.[3]  Doraville's city council is statutorily required to budget for revenue it anticipates receiving from each source when preparing the city's annual budget each year, which necessarily includes revenue it receives from the municipal court, and to thereafter balance said budget by necessarily "relying" on the revenue it actually receives from the municipal court each month.[4]  Because plaintiffs are challenging Doraville's performance of quintessential executive functions of local governments regarding municipal finances, the city's actions in this regard are governed by valid and unchallenged statutes and the resolution of

---

[3] O.C.G.A. § 40-13-26(a). Moreover, if any party charged with such offense requests that the case be bound over to the DeKalb County probate or superior court, the city receives no portion of the fines and fees imposed therein. *Id.*

[4] O.C.G.A. § 36-81-5(b) ("The budget document, at a minimum, shall provide, for the appropriate budget period, a statement of the amount budgeted for anticipated revenues by source and the amount budgeted for expenditures at the legal level of control."); O.C.G.A. § 36-81-3(b)(1) ("Each unit of local government shall adopt and operate under an annual balanced budget for the general fund."); O.C.G.A. § 36-81-3(b)(3) ("A budget ordinance or resolution is balanced when the sum of estimated revenues and appropriated fund balances is equal to appropriations.").

such policy issues are properly left to the state legislature, not federal courts.[5] Simply put, plaintiffs failed to demonstrate any logical reasoning or argument to preclude dismissal of their complaint as set forth more fully in Doraville's original memorandum of law filed in support of its motion to dismiss.

First, plaintiffs failed to demonstrate that they suffered any actual or particularized injury or violation of their personal, federal rights (as contrasted with a common, public injury), or that they face some imminent and immediate threat of future harm (as contrasted with a merely speculative and hypothetical threat of possible future injury). Thus, no justiciable case or controversy has been presented for this Court to assume subject matter jurisdiction in this case under Article III. Second, plaintiffs' claims are foreclosed by the *Rooker-Feldman* doctrine, a jurisdictional rule which precludes federal courts from reviewing cases brought, as here, by state-court losers complaining of state-court judgments with which they disagree. Third, because plaintiffs offer nothing more than impermissible and classic conclusory boilerplate allegations with no facts alleged in support thereof, they failed to plead a plausible claim for declaratory and injunctive relief under the Fourteenth Amendment or any other federal right.

---

[5] *See Public Citizen, Inc. v. Bomer*, 115 F. Supp. 2d 743, 746 (W.D.Tex., 2000), *affirmed by, Public Citizen, Inc. v. Bomer,* 274 F.3d 212, 216 (5th Cir. 2001)

## II.  ARGUMENT AND CITATION TO AUTHORITY

### A. Plaintiffs lack standing

To properly allege an injury-in-fact necessary for standing under Article III, plaintiffs must plausibly assert that they "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical."[6]  As explained by the Eleventh Circuit, "[i]t is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution."[7] Thus, "[i]t is not enough that the [plaintiff]'s complaint sets forth facts from which [a court] could imagine an injury sufficient to satisfy Article III's standing requirements. Indeed, [courts] should not speculate concerning the existence of standing .... If the plaintiff fails to meet its burden, this court lacks the power to create jurisdiction by embellishing a

---

[6] *Burdick v. Kennedy,* 700 F. App'x 984, 986 (11th Cir. 2017) (internal quotation marks and citation omitted); *Elend v. Basham,* 471 F.3d 1199, 1207 (11th Cir. 2006).

[7] *Lewis v. Casey*, 116 S.Ct. 2174, 2179 (1996); *Bomer*, 274 F.3d at 218 (affirming dismissal of action for lack of injury to support standing in action wherein plaintiffs were "simply challenging the system" which allowed for judicial financial contributions to judges for lack of standing) (citing other applicable cases).

deficient allegation of injury."[8] The complaint should be dismissed because plaintiffs have not and cannot meet their burden in this regard.

**1) Plaintiffs fail to demonstrate that they have suffered any actual or concrete injury in fact.**

The only injury alleged by plaintiffs as a result of Doraville's challenged budgeting practices is an entirely abstract and theoretical injury — past and future exposure to "prosecution and adjudication that does not provide due process" in a municipal court system infected with an alleged bias or an "appearance of" such bias — which is woefully insufficient to demonstrate that plaintiffs have suffered an "actual" or "concrete" injury in fact.[9] Plaintiffs allege no specific instances of misconduct with respect to any particular government actors in connection with any past or future municipal court proceedings.[10] Critically, they neither challenge the lawfulness of the ordinances and traffic laws with which they were charged and in fact, do not dispute that they were in fact guilty of such violations.

---

[8] *DiMaio v. Democratic Nat. Comm.*, 520 F.3d 1299, 1301 (11th Cir. 2008) (quoting *Elend*, 471 F.3d at 1205-06).

[9] (Doc. 20, p. 16); *Public Citizen, Inc. v. Bomer,* 274 F.3d 212, 216 (5th Cir. 2001) (plaintiffs failed to plead injury in fact because "no actual impropriety or a specific instance of an appearance of impropriety [was] alleged").

[10] *City of Los Angeles v. Lyons*, 461 U.S. 95, 123, n. 13 (1983) (noting that in *O'Shea v. Littleton,* no "specific instances" of misconduct was alleged against judicial officers and that the Court "referred to the absence of past injury repeatedly").

As an initial matter, plaintiffs' threatened exposure to future prosecution for violating valid local ordinances or state traffic laws is not a legally cognizable injury.  A "legally cognizable injury requires infringement of an interest protected by statute or otherwise. That interest must consist of obtaining compensation for, or preventing, the violation of a legally protected right. Indeed, standing requires personal injury suffered by [a party] as a consequence of the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees."[11] Plaintiffs allege no threat of future tickets or prosecutions unless, like any other Doraville resident or driver, they violate a valid and unchallenged state traffic law or local city ordinance while present within the city limits.  Plaintiffs cannot seriously argue that they have any legally protected right to violate entirely valid local ordinances or state traffic laws and avoid prosecution for same.

---

[11] *Burdick*, 700 F. App'x at 986 (internal quotation marks and citations omitted); *Lyons*, 461 U.S. at 101–02 (emphasis added) ("[T]he injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'"); *Pub. Citizen, Inc.*, 274 F.3d at 218 ("Neither the mere fact of Plaintiffs' past appearances in Texas state courts nor their allegations of hypothetical future litigation support finding the 'actual or imminent' injury required by Article III.").

Moreover, it is well-established that an injury in fact must be "concrete and particularized," *i.e.*, "real, and not abstract."[12] Other than an entirely abstract and institutional *per se* financial bias which allegedly infects or "appears to" infect the entire municipal court system and all prosecutors and judges involved in the proceedings therein, plaintiffs can point to no "particularized" or "concrete" injury they suffered in connection with their past or possible future municipal court proceedings arising out of Doraville's challenged budgetary policies. Given plaintiffs' failure to demonstrate that they suffered any concrete and legally cognizable injury in fact, as required by Article III, they fail to demonstrate standing to pursue their claims.

2) <u>No imminent or impending plausible threat of future injury.</u>

Contrary to plaintiffs' efforts to conflate the issue, to demonstrate standing for injunctive and declaratory relief, plaintiffs must demonstrate that their alleged threat of future prosecution is "imminent" and "certainly impending."[13] "For an

---

[12] *Burdick*, 700 F. App'x at 986; *Elend*, 471 F.3d at 1205-06.

[13] *Burdick*, 700 F. App'x at 986 (quoting *Am. Civil Liberties Union of Fla. v. Miami-Dade County School Bd.*, 557 F.3d 1177, 1193 (11th Cir. 2009)); *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013). In contrast, in cases involving pre-enforcement challenges to a statute, the injury-in-fact requirement is satisfied if a plaintiff alleges a "credible threat of prosecution" for "engag[ing] in a course of conduct arguably affected with a constitutional interest" in violation of the

injury to be 'imminent,' 'the anticipated injury [must] occur with[in] some fixed period of time in the future.'"[14]

Plaintiffs' own allegations in their complaint confirm that no such imminent, immediate, or certainly impending threat of future injury exists. Despite alleging the continued existence of local ordinance violations on Brucker's property since October 2016, Brucker has never been cited or prosecuted for these violations during this almost two-year period.[15]  Plaintiffs simply allege in rote and conclusory fashion that there exists an "imminent" and "immediate" threat of future prosecution because a code enforcement officer "could drive by Brucker's house, see these same conditions and, issue a ticket" at any point, which amount to nothing more than impermissible boilerplate allegations.

Plaintiffs only vaguely speculate that they are subject to possible future prosecution "some day" in the future, with no "specification of when the some

---

challenged statute. *Susan B. Anthony List v. Driehaus,* 134 S. Ct. 2334, 2342 (2014); *GeorgiaCarry.org v. Georgia,* 687 F.3d 1244 (11th Cir. 2012). No such pre-enforcement statutory challenges are asserted in the instant action.

[14] *Burdick*, 700 F. App'x at 986 (internal citation omitted).

[15] (Doc. 20, p. 18) ("[T]here is no indication that [Brucker's] property is any less in violation now than it was at the time she was prosecuted [in October 2016].").

day will be."[16]  Indeed, the prospect of future injury alleged in the complaint is entirely contingent on whether, after violating a valid law or ordinance, plaintiffs "are charged, held to answer, and tried in any proceedings before [the municipal court."[17] Plaintiffs' allegations of such a remote and speculative threat of future prosecution do nothing to demonstrate any "imminent" or "certainly impending" threat and, thus, are woefully insufficient to establish the requisite injury in fact necessary to support standing.[18]

---

[16] *Am. Civil Liberties Union of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*, 557 F.3d 1177, 1193–94 (11th Cir. 2009); *Malowney v. Federal Collection Deposit Group*, 193 F.3d 1342, 1347 (11th Cir. 1999) ("There must be a substantial likelihood that the plaintiff will suffer future injury: a "perhaps" or "maybe" chance is not enough.").

[17] *Lyons*, 461 U.S. at 102–03; *O'Shea*, 414 U.S. at 497 ("[W]e can only speculate whether respondents will be arrested, either again or for the first time, for violating a municipal ordinance or a state statute, particularly in the absence of any allegations that unconstitutional criminal statutes are being employed to deter constitutionally protected conduct."); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013) ("We decline to abandon our usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors.").

[18] *Lyons*, 461 U.S. at 102–03; *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974) ("The nature of respondents' activities is not described in detail and no specific threats are alleged to have been made against them."); *Am. Civil Liberties Union of Fla., Inc.*, 557 F.3d 1177, 1193–94 (11th Cir. 2009); *Elend*, 471 F.3d at 1206–07; *Burdick*, 700 F. App'x at 986.

**3) <u>Plaintiffs assert merely generalized grievances which are insufficient to confer standing.</u>**

In addition to Article III's constitutional limitations, prudential concerns further require that plaintiffs demonstrate "a personal stake in the outcome, *distinct* from a generally available grievance about government" to establish standing.[19] Plaintiffs make no effort to identify any particularized harm they have or will suffer as a result of Doraville's financial budgeting practices which is distinguishable from that of every other Doraville citizen who owns property in the city or any person who drives a vehicle within Doraville's city limits and who violates a local city ordinance or state traffic law in connection therewith.  In this regard, plaintiffs note in their response brief that their claims are premised on allegations that Doraville's challenged budgeting policies violate "the due process rights of *all who may be prosecuted and convicted in Doraville's municipal courts*," which rights and interests are indistinguishable from plaintiffs.[20]  It is nowhere alleged that any of the named plaintiffs, or any of the other third parties whose

---

[19] *Gill v. Whitford*, 138 S. Ct. 1916, 1923 (2018) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 700 (2013)) ("That threshold requirement 'ensures that [judges] act as judges, and do not engage in policymaking properly left to elected representatives.").

[20] (Doc. 20, p. 10) (emphasis added).

interests they seek to protect, have ever been charged, convicted or paid fines for violating an invalid city ordinance or state traffic law.

Contrary to plaintiffs' assertions to the contrary, the dispositive inquiry is not whether plaintiffs have sufficiently alleged that they have been personally injured, but whether plaintiffs' alleged injuries are "*shared* in substantially equal measure by all or a large class of citizens."[21]  For example, in *Hollingsworth*, the plaintiffs were a class of same-sex couples who wanted to marry, but were prevented from doing so due to the enforcement of state laws prohibiting same, and thereafter filed a federal action challenging those laws. Although the *Hollingsworth* plaintiffs clearly had a personal interest in enjoining the enforcement of laws that prevented them from marrying, because their injury was not

---

[21] (Doc. 20, p. 23); *Warth v. Seldin*, 422 U.S. 490, 499 (1975); Pub. Citizen, Inc., 274 F.3d at 219 ("To the contrary, and no matter how well intended, Plaintiffs have done little more than present a generalized grievance, common to all citizens or litigants in Texas, and as such, lack standing.") (relying on *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997) ("An interest shared generally with the public at large in the proper application of the Constitution and laws will not [create standing]."); *Lujan*, 504 U.S. at 573–74 ("We have consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief [that] no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy.")).

"distinguishable from the general interest of every California citizen," the Supreme Court held that the plaintiffs' claims were nothing more than generalized grievances which were insufficient to confer standing under Article III.[22] As was the case in *Hollingsworth*, because plaintiffs' interest in enjoining Doraville's governmental practices related to its finances and budgeting is shared by, at a minimum, *all* citizens who own property in Doraville and all persons who drive automobiles in Doraville, their claims are merely generalized grievances regarding governmental action which are insufficient to confer standing.

### B. Rooker-Feldman precludes plaintiffs' federal claims

In addition to their failure to establish standing, the *Rooker–Feldman* doctrine "places limits on the subject-matter jurisdiction of federal district courts and courts of appeal over certain matters related to previous state court litigation," and further precludes plaintiffs' claims.[23] "A district court engages in impermissible appellate review when it entertains a claim that the litigants did not argue in the state court, but is inextricably intertwined with the state court judgment."[24] "A

---

[22] *Hollingsworth*, 570 U.S. at 694.

[23] *Gogola v. Zingale*, 141 Fed. Appx. 839, 842 (11th Cir. 2005); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia v. Feldman*, 460 U.S. 462 (1983).

[24] *Woodhull v. Mascarella*, 699 F. App'x 872, 875 (11th Cir. 2017).

claim is 'inextricably intertwined' if it would 'effectively nullify' the state court judgment, or [if] it 'succeeds only to the extent that the state court wrongly decided the issues.'"[25]

Plaintiffs do not dispute that their federal claims for injunctive and declaratory relief can succeed only to the extent this Court finds that, as a result of Doraville's challenged budgeting practices, plaintiffs were unlawfully charged, prosecuted, convicted, and sentenced to pay a monetary fine by financially-interested code enforcement officials, police officers, prosecutors and municipal court judges, without due process of law in violation of the Fourteenth Amendment.[26]   Because success on plaintiffs' federal claims would "effectively nullify" their prior state court judgments, their federal claims are "inextricably intertwined" with the same and are thus barred by *Rooker-Feldman.*[27]

Without making any effort to demonstrate otherwise, plaintiffs instead blindly assert that *Rooker-Feldman* does not bar their claims because they are "not seeking to overturn their prior convictions or to have their fines returned."[28]   As

---

[25] *May v. Morgan Cty. Georgia*, 878 F.3d 1001, 1005 (11th Cir. 2017) (internal quotation marks and citation omitted).

[26] *See id*.

[27] *See Teagan v. City of McDonough,* No. 1:15-cv-00607-ELR, Doc. 96 (N.D. Ga. Mar. 7, 2018).

[28] (Doc. 20, p. 26).

explained by the Eleventh Circuit, "[t]hough the federal case may not be styled as an appeal of a state court judgment, *Rooker-Feldman* is not so easily bypassed. A claim that at its heart challenges the state court decision itself—and not the statute or law which underlies that decision—falls within the doctrine because it 'complain[s] of injuries caused by state-court judgments' and 'invite[s] ... review and rejection of those judgments.'"[29]

Moreover, plaintiffs' assertion that *Rooker-Feldman* is inapplicable because they "could not have sought prospective injunctive relief" in their respective municipal court cases, is directly contrary to Eleventh Circuit precedent and should be disregarded by this Court.[30]   To determine whether *Rooker-Feldman*

---

[29] *May*, 878 F.3d at 1005; *Mickens v. Tenth Judicial Circuit,* 181 Fed. Appx. 865, 874 (11th Cir. 2006) ("[B]y raising constitutional and tort challenges relating to their eviction from the property, in essence, were attempting to reverse the state court's orders relating to ownership of the property in question"); *Gogola v. Zingale,* 141 Fed. Appx. 839, 842 (11th Cir. 2005) ("[B]y challenging the constitutionality of the alimony statute, in essence, was attempting to reverse the state court's order regarding the payment of alimony").

[30] (Doc. 20, p. 26). Contrary to plaintiffs' mischaracterizations otherwise, *Exxon Mobil* involved application of Rooker-Feldman in a federal case involving parallel state court proceedings and is thus wholly inapplicable to the instant case wherein no such parallel state court proceedings are at issue. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293, 125 S. Ct. 1517, 1527, 161 L. Ed. 2d 454 (2005) ("This case surely is not the paradigm situation in which Rooker–Feldman precludes a federal district court from proceeding.").

applies, "the type of relief sought by the plaintiff" is neither relevant nor dispositive.[31]   Instead, the Eleventh Circuit "focus[es] on the federal claim's relationship to the issues involved in the state court proceeding," and applies *Rooker-Feldman* to "bar all federal claims which were, or should have been, central to the state court decision, even if those claims seek a form of relief that might not have been available from the state court."[32]  Thus, "a state court loser cannot avoid *Rooker-Feldman*'s bar by cleverly cloaking her pleadings in the cloth of a different claim. Pretext is not tolerated."[33]

While it is clear that a municipal court cannot award injunctive relief, plaintiffs indisputably had the opportunity to challenge the sufficiency of due process in connection with their municipal court proceedings and the officials and judges involved therein, and to seek further review in the state court system, which challenge is central to the federal claims asserted by plaintiffs in this action. Indeed, in *Tumey, Ward,* and *Dugan*, the seminal United States Supreme Court decisions establishing the applicable legal standards on which plaintiffs' federal claims are premised, each of the criminal defendants properly asserted their

---

[31] *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1333 (11th Cir. 2001).

[32] *Id.*

[33] *May*, 878 F.3d at 1005.

respective due process challenges in their underlying state court proceedings, which were thereafter properly appealed through the state court system until final review by the United States Supreme Court.[34] None of those state court cases involved a separate federal action asking a federal district court to review the sufficiency of due process afforded to them in municipal court.[35]

Plaintiffs also disregard the law in this Circuit and mistakenly represent that "courts do not apply *Rooker-Feldman* to complaints seeking 'only prospective injunctive and declaratory relief that would prevent' future unlawful acts."[36] Based on a minimal and cursory review of relevant case law from the Eleventh

---

[34] *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) ("[T]he Rooker–Feldman doctrine bar[s] federal court review of state court final judgments—a function reserved in the federal system for the United States Supreme Court.").

[35] *Tumey v. State of Ohio,* 273 U.S. 510, 515 (1927) (criminal defendant "moved for his dismissal because of the disqualification of the mayor to try him under the Fourteenth Amendment"); *Ward v. Village of Monroeville, Ohio,* 409 U.S. 57, 57–58 (1972) (reviewing state supreme court's denial of defendant's appeal of conviction by mayor "who also had responsibilities for revenue production and law enforcement denied him a trial before a disinterested and impartial judicial officer as guaranteed by the Due Process Clause of the Fourteenth Amendment"); *Dugan v. State of Ohio*, 277 U.S. 61, 62 (1928) (reviewing state supreme court's denial of defendant's appeal of conviction based on "question of the constitutional impartiality of the mayor to try the case"); *In Focus Entertainment Intern., Inc. v. Bailey,* 256 Ga. App. 283, 283 (2002) (issue of due process challenge was not preserved on appeal of municipal court judgment because plaintiff failed to preserve available challenge by asserting it in the municipal court).

[36] (Doc. 20, p. 25).

Circuit, it is abundantly clear that "the *Rooker–Feldman* bar applies to [a plaintiff's] request for injunctive relief in addition to its request for declaratory relief."[37] Plaintiffs' frivolous and conclusory assertions to the contrary are without foundation in law or fact. Because plaintiffs' claims are barred by *Rooker-Feldman,* the complaint should be dismissed for lack of subject matter jurisdiction.

**C.** **Plaintiffs fail to plausibly allege a Fourteenth Amendment due process claim.**

It is respectfully submitted that Doraville's motion to dismiss should be granted for failure to state a plausible violation of the Fourteenth Amendment pursuant to Rule 12(b)(6). Plaintiffs do not identify any code or law enforcement officer, prosecutor, or municipal court judge who personally received any financial benefit arising from plaintiffs' municipal court prosecutions and convictions. They do not identify any individual officer, prosecutor, or judge who violated their federal rights in connection with said proceedings. They do not identify any individual member of Doraville's city council who was vested with any executive

---

[37] *Blue Cross and Blue Shield of Maryland, Inc. v. Weiner*, 868 F.2d 1550, 1556 (11th Cir. 1989) ("Both the Supreme Court and this court have dismissed injunctive relief claims under the *Rooker–Feldman* doctrine."); *Mickens v. Tenth Judicial Circuit*, 181 F. App'x 865, 874–75 (11th Cir. 2006) (citing *Weiner*, 868 F.2d at 1556) ("Indeed, we have explained that the Rooker–Feldman doctrine can bar injunctive relief as well as other forms of relief.").

duties related to the city's finances and involved in preparing, balancing, or administering the city's financial budget who was or will in the future also be involved in the prosecution and adjudication of any and, or who received any direct financial benefit from receipt by the city of any fines and fees imposed in plaintiffs' cases. There is no plausible allegation that any particular officer, prosecutor, or judge was acting under any actual or perceived threat of losing their job or losing any other benefit if they did not meet the city council's budgetary expectations in this regard.

Simply put, the Supreme Court's analysis in *Dugan v. Ohio* is directly applicable and establishes that plaintiffs' failure to state a plausible claim for relief in this case, under the Fourteenth Amendment or otherwise, subjects their complaint to dismissal.  Because plaintiffs fail to allege a plausible claim for relief, Doraville's motion to dismiss is well founded and it is respectfully asserted that it should be granted.

## III.   <u>CONCLUSION</u>

For all of the foregoing reasons, and the reasons advanced in Doraville's original memorandum of law in support of its motion to dismiss, this defendant respectfully prays that Doraville's motion be sustained and granted pursuant to Rules 12(b)(1) and 12(b)(6); that the present complaint be dismissed; that Doraville

recover its costs; and that Doraville be granted such relief and such other and further relief as this Court deems just and proper in the circumstances.

The undersigned, in accord with L.R. 7.1 and 5.1(b) hereby certifies that the type font used herein is 13-Point Book Antiqua font.

This 13th day of August, 2018.

/s/ Harvey S. Gray
Harvey S. Gray
Georgia Bar No. 305838

/s/ Dianna J. Lee
Dianna J. Lee
Georgia Bar No. 163391
*Attorneys for Defendant City of Doraville*

**GRAY, RUST, ST. AMAND, MOFFETT & BRIESKE, L.L.P.**
1700 Atlanta Plaza
950 East Paces Ferry Road
Atlanta, GA  30326
(404) 870-7376 (Gray)
(404) 870-5955 (Lee)
hgray@grsmb.com
dlee@grsmb.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this date electronically filed the foregoing **DEFENDANT CITY OF DORAVILLE'S BRIEF IN REPLY TO PLAINTIFFS' OPPOSITION TO ITS MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to all counsel of record in this action.

This 13th day of August, 2018.

/s/ Dianna J. Lee
Harvey S. Gray
Georgia Bar No. 305838
Dianna J. Lee
Georgia Bar No.163391
*Attorneys for Defendant City of Doraville*

**GRAY, RUST, ST. AMAND, MOFFETT & BRIESKE, L.L.P.**
1700 Atlanta Plaza
950 East Paces Ferry Road
Atlanta, GA  30326
(404) 870-7376 (Gray)
(404) 870-5955 (Lee)
(404) 870-7374 (Fax)
hgray@grsmb.com
dlee@grsmb.com