# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| HILDA BRUCKER; JEFFERY THORNTON; JANICE CRAIG; and BYRON BILLINGSLEY, | |
| Plaintiffs, | Civil Action No. 1:18-cv-02375-RWS |
| vs. | **PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** |
| THE CITY OF DORAVILLE, a Georgia municipal corporation, | |
| Defendant. | |

Joshua A. House*†
California Bar No. 284856
Institute for Justice
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Tel: (703) 682-9320
Fax: (703) 682-9321
jhouse@ij.org

Anthony Sanders*
Minnesota Bar No. 0387307
Institute for Justice
520 Nicollet Mall, Suite 550
Minneapolis, MN 55402
Tel: (612) 435-3451
Fax: (612) 435-5875
asanders@ij.org

Frank B. Strickland
Georgia Bar No. 687600
Taylor English Duma LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
Tel: (770) 434-6868
Fax: (770) 434-7376
fstrickland@taylorenglish.com

*Admitted pro hac vice
† Lead Counsel

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

I.   The Material Facts Are Not in Dispute. .........................................................2

II.  The Evidence Shows that the City Depends on Fines, Fees, and Forfeitures to Operate, and this Dependence Creates an Unconstitutional Bias for Its Court, Prosecutor, and Police. ........................................................................5

   A.  Doraville's past budgets are relevant to proving a policy and practice of relying on fines, fees, and forfeitures. ..........................................................6

   B.  The evidence shows that Doraville's reliance on fines, fees, and forfeitures creates a systemic and unconstitutional conflict of interest. .....9

III. Plaintiffs Are Entitled to Injunctive Relief......................................................12

   A.  Plaintiffs face irreparable harm. .................................................................13

   B.  Plaintiffs have no adequate remedies at law...............................................13

   C.  The balance of hardships weighs in Plaintiffs' favor. ...............................14

   D.  Enjoining Doraville's practices will serve the public interest...................15

CONCLUSION.................................................................................... 15

CERTIFICATE PURSUANT TO LOCAL RULE 7.1(D).................................... 17

CERTIFICATE OF SERVICE .............................................................. 18

# TABLE OF AUTHORITIES

<u>Cases</u>

*Barrett v. Walker Cty. Sch. Dist.*,
  872 F.3d 1209 (11th Cir. 2017) ............................................................13

*Brown v. Vance*,
  637 F.2d 272, 281 (5th Cir. 1981) ................................................ 11, 12

*Caliste v. Cantrell*,
  329 F. Supp. 3d 296 (E.D. La. 2018) ..................................................11

*Caliste v. Cantrell*,
  937 F.3d 525 (5th Cir. 2019) ..............................................................11

*Connick v. Thompson*,
  563 U.S. 51 (2011) ...............................................................................7

*Craig v. Floyd Cty.*,
  643 F.3d 1306 (11th Cir. 2011) .............................................................7

*D.M. v. Minnesota State High Sch. League*,
  917 F.3d 994 (8th Cir. 2019) ..............................................................15

*Hubbard v. Citimortgage Inc.*,
  No. 1:12-CV-03906-RWS, 2013 WL 12101060 (N.D. Ga. 2013)......................12

*Jones v. Governor of Fla.*,
  950 F.3d 795 (11th Cir. 2020) .............................................................14

*Target Media Partners v. Specialty Mktg. Corp.*,
  881 F.3d 1279 (11th Cir. 2018) .............................................................1

*Ward v. Village of Monroeville*,

    409 U.S. 57 (1972) ................................................................................5

*Statutes*

Doraville Mun. Code § 9-1 .........................................................................4

Ga. Code § 36-32-2(a) ...............................................................................5

<u>Rules</u>

Fed. R. Civ. P. 36 .......................................................................................4

<u>Other Authorities</u>

Judicial Council of Ga., City of Doraville Hiring Part-Time Municipal Court

    Judge(s), *available at* https://perma.cc/U9P8-NRFV ...........................5

## ARGUMENT

This case is about whether Defendant City of Doraville's municipal court, prosecutor, and law enforcement have an unconstitutional institutional bias to ticket, prosecute, and fine people. That institutional bias—regardless of whether any particular city official acts on it—conflicts with city officials' due-process obligations to administer the law neutrally and in the public interest. In denying Doraville's motion to dismiss, this Court recognized Plaintiffs stated a cause of action and allowed them to prove their case. As detailed in Plaintiffs' Motion for Summary Judgment (Doc. 91), they have now done that.

Doraville's response largely avoids the merits of Plaintiffs' claims. It instead re-raises issues that this Court already rejected at the motion-to-dismiss stage.[1] And it also argues that, even if Doraville has violated the Constitution, Plaintiffs are not entitled to the relief they seek. Doraville's contentions should be rejected, and Plaintiffs' Motion granted, for three reasons:

---

[1] Doraville argues that Plaintiffs' case is barred by the *Rooker–Feldman* doctrine. Def.'s Resp. (Doc. 96) at 6–7. This Court has already rejected this argument. Order Den'g Mot. Dismiss (Doc. 30) at 15. It should be rejected again. Doraville does not present any new evidence questioning this Court's past determination, and Plaintiffs' Motion does not "seek reversal of state-court decisions." *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1285 (11th Cir. 2018).

First, Doraville does not dispute any facts material to whether it has an unconstitutional institutional incentive to ticket, prosecute, and fine people to balance its budget. Second, Doraville's merits argument, that Plaintiffs' Motion did not prove any constitutional violations, is unpersuasive. And third, Plaintiffs have satisfied every element for a permanent injunction.

## I.      The Material Facts Are Not in Dispute.

Doraville does not dispute most facts in Plaintiffs' Motion. *See generally* Def.'s Resp. Pls.' Statement Undisputed Material Facts Supp. Mot. Summ. J. (Def.'s Resp. SUMF) (Doc. 96-1). And in the two cases where there does appear to be a dispute, Doraville simply misunderstands the record.

First, with respect to the calculation of the City's fines and forfeitures revenues, the City misstates that its expert calculated that "fine and fee revenues were an average of 16.21% of Doraville's general fund revenues from fiscal years 2008 to 2019." Def.'s Resp. SUMF (Doc. 96-1) ¶ 3. This is wrong for two reasons. First, Doraville's expert's calculations used the average amounts of fines and forfeitures from 2013 to 2019—a different date range. Brown Aff., Ex. A (Doc. 89-3) at 82. Second, the expert did not calculate the percentage of fines and forfeitures as a percentage of general fund revenues. He instead calculated fines and forfeitures as a percentage of general fund revenues ***plus*** storm water fund and

"fire fee" fund totals.[2] *Id.* Given the larger denominator, of course the fees would be a smaller percentage of those additional revenues than that calculated by Plaintiffs' expert. Further, even as calculated by Doraville's expert, the City's fine collections make it an outlier. When Plaintiffs' expert compared Doraville to Georgia cities whose general funds do not include stormwater funds, Doraville still far exceeds the average:

| CAFR Data | FY2008-FY2019 Doraville | FY2018 Doraville | Georgia Peer Cities (5-50k residents) with separate Stormwater Fund |
|---|---|---|---|
| Fine and Forfeiture Revenues as a percent of General Fund Revenues | 21.9% | 16.4% | 6.2% |

Zielke Decl. (Doc. 91-5) ¶¶ 99–100 & Ex. 9a.[3]

---

[2] In Doraville, stormwater and fire funds are dedicated funds, meaning that, unlike general fund dollars, the money is dedicated to specific purposes and cannot be transferred to other uses—though sometimes general fund revenues can subsidize these dedicated funds. *See* Brown Dep. at 86:2–89:3 (Excerpt attached to House Decl. Supp. Pls.' Mot., filed concurrently) (Defendant's expert explaining that, in general, enterprise funds are funds dedicated to a special purpose, with revenues raised specifically for that purpose, but that sometimes general funds will subsidize these enterprise funds); *see also* Zielke Decl. (Doc. 91-5) ¶ 15 ("The General Fund is a municipality's primary fund appropriation used to pay for day-to-day operations.").

[3] Doraville's SUMF response also objects to some facts on the basis that "city budgets for different cities are not comparable." *See, e.g.*, Def.'s Resp. SUMF (Doc. 96-1) ¶¶ 31–35. But that position contradicts its own expert, who testified that it is possible to draw comparisons across different cities, House Decl. Opp. Def.'s Mot., Ex. A (Doc. 95-3) ("Brown Dep.") 39:7–9, 39:22–40:2, and that "Doraville should be compared with urban cities and should not be compared with

Second, Doraville appears to dispute Plaintiffs' claim that "the municipal judge serves at the pleasure of the city council." *See* Def.'s Resp. SUMF (Doc. 96-1) ¶ 48. As noted in Plaintiffs' Response to Doraville's Motion for Summary judgment, this contradicts the City's Rule 30(b)(6) testimony as well as its own municipal code, both of which state that the municipal judge "serves at the pleasure of the city council." Pls.' Br. Resp. Def.'s Mot. (Pls.' Resp.) (Doc. 95) at 8–9 (quoting Carter Dep. 20:21–22[4] and Doraville Mun. Code § 9-1). Yet the City's dispute is merely semantic, since it has admitted under Rule 36 that "after the contract term for the current Doraville municipal court judge expires, Doraville has no obligation, legal or otherwise, to re-appoint that same person to the position of municipal court judge." Sanders Decl., Ex. 9 (Doc. 91-15), at No. 9.[5] Whatever it means to "serve at the pleasure of the city council," Plaintiffs have shown that

---

rural cities," Brown Dep. 66:20–67:1. His report compared Doraville to "true peers," Hapeville and College Park. Brown Aff. Ex. A (Doc. 89-3) at 33.

[4] Unless otherwise noted, all excerpts of depositions are included as exhibits to the Declaration of Anthony Sanders (Doc. 91-6).

[5] The City objects to Plaintiffs' direct quote of the City's own Rule 36 admission "on the grounds that this statement mischaracterizes the cited record evidence." Def.'s Resp. SUMF (Doc. 96-1) ¶ 47. But Rule 36 admissions on "facts, the application of law to fact, or opinions about either" are "conclusively established." Fed. R. Civ. P. 36 (a)(1)(A), (b).

4

Doraville's judge can be removed at any time and for any reason after his contract expires.[6] *See* Pls.' Br. (Doc. 91-19) at 13–16; Pls.' Resp. (Doc. 95) at 8–9.

## II.   The Evidence Shows that the City Depends on Fines, Fees, and Forfeitures to Operate, and this Dependence Creates an Unconstitutional Bias for Its Court, Prosecutor, and Police.

Plaintiffs' Motion argued that Doraville's reliance on fines and fees created a conflict of interest for its municipal court, prosecutor, and law enforcement: Instead of solely serving the public interest, the City's need for revenue tempts them, or appears to tempt them, to perform their duties in a way that maximizes the City's fines, fees, and forfeitures revenues. *See* Pls.' Br. (Doc. 91-19) at 10–25, 28–35. That violates due process. *See Ward v. Village of Monroeville*, 409 U.S. 57, 60 (1972) (holding that it "necessarily involves a lack of due process of law" when a judicial official's "responsibilities for [city] finances may make him partisan to maintain the high level of contribution from the [municipal] court").

---

[6] Georgia law only guarantees the municipal judge a contract term of one year. Ga. Code § 36-32-2(a). Doraville's judge was hired 20 years ago. Carter Dep. 21:7–8. Any protected contract term expired long ago. Moreover, the City and its prosecutor hire new judges. A job posting published while the parties briefed Plaintiffs' Summary Judgment Motion directs that applications be sent to the same city prosecutor responsible for prosecuting cases in Doraville's court. *See* Judicial Council of Ga., City of Doraville Hiring Part-Time Municipal Court Judge(s), *available at* https://perma.cc/U9P8-NRFV.

Doraville's brief raises just two points in response. First, Doraville argues that the budget information Plaintiffs rely on is irrelevant because it uses Doraville's financial reports going back to 2008, instead of looking back only to 2016. Second, Doraville argues that there is no conflict of interest because the evidence does not show Doraville relies on fines and fees more than other cities. Both arguments are wrong.

## A. Doraville's past budgets are relevant to proving a policy and practice of relying on fines, fees, and forfeitures.

Doraville argues that the 2008 through 2019 budgets cited by Plaintiffs "have no bearing whatsoever on plaintiffs' claims" that the City currently has a policy and practice of relying on fines and fees. Def.'s Resp. (Doc. 96) at 13. It suggests that this Court instead use a different set of budget figures—which Doraville provides without citation to the record—showing the City's budgeted revenues from fiscal years 2016 to 2020. *Id.* at 14.[7]

But the City's historical pattern of relying on fines and fees to balance its budget is relevant to establishing Doraville's behavior is an unconstitutional policy or practice. As this Court noted, Plaintiffs here claim that "the City's ***institutional***

---

[7] Doraville does not explain either why this Court's analysis should be limited to fiscal years 2016 to 2020 or why its figures deviate from its expert's use of fiscal years 2013 to 2019. *See* Brown Aff., Ex. A (Doc. 89-3) at 82.

***practices*** generate two impermissible conflicts of interest": a conflict for its

judicial officials and a conflict for its enforcement officials. Order Recons. (Doc.

39) at 5. And to determine whether these "institutional practices" exist, a federal

court will generally consider more than a single, recent example of municipal

conduct. The Eleventh Circuit looks to "'[a] pattern of similar constitutional

violations'" to determine municipal liability. *Craig v. Floyd City*, 643 F.3d 1306,

1310 (11th Cir. 2011) (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). It

considers whether a practice is "longstanding" in order to "ensure[] that a

municipality is held liable only for" municipal acts or policies. *Id.* (cleaned up). It

is therefore relevant to establish not only a recent example of unconstitutional

conduct but also a longstanding unconstitutional practice.

Hence, the City's longstanding budgeting practices are relevant to Plaintiffs'

claims. And Plaintiffs have shown that Doraville has, for at least a decade,

followed a policy and practice of relying on fines, fees, and forfeitures to fund the

City. At no time in the decade before this lawsuit was filed did actual court

revenues drop below 16 percent of the City's operating expenses:



Zielke Decl. (Doc. 91-5) ¶¶ 16–18 & Exs. 2, 4. It was only in fiscal year 2019, the

first full fiscal year after this lawsuit was filed, that Doraville's court revenues

dropped to 11.6 percent—which is still nearly 10 times higher than the average

American city's. Zielke Decl. (Doc. 91-5) ¶ 18 & Ex. 3 ¶ 71 & Ex. 6a (showing

U.S. average of between 1.2 and 1.4 percent of revenues from fines and

forfeitures).

   In short, by showing Doraville has had a decade-long reliance on the

municipal court for between 16 and 34 percent of its annual revenue, Plaintiffs

have shown the City has a policy or practice of being "highly dependent on

revenue it derives from its municipal court." Order Recons. (Doc. 39) at 2.

**B.   The evidence shows that Doraville's reliance on fines, fees, and forfeitures creates a systemic and unconstitutional conflict of interest.**

Plaintiffs' Motion established that Doraville's officials face a systemic, institutional conflict of interest to boost fines and forfeitures revenues, and that this conflict violates due process. *See* Pls.' Br. (Doc. 91-19) at 10–25, 28–35. Doraville responds that Plaintiffs did not show a conflict of interest because "Doraville's interest in maintaining a balanced budget is [no] greater than that of any other city in Georgia." Def.'s Resp. (Doc. 96) at 17. Yet, as Plaintiffs showed in their Response to Doraville's Motion, the unrebutted testimony of Plaintiff's expert proves that Doraville's reliance on fines and fees *is* greater than other cities.' *See* Pls.' Resp. (Doc. 95) at 17–19.

Over the past decade, about 22 percent of Doraville's general fund came from fines, fees, and forfeitures. Zielke Decl. (Doc. 91-5) ¶ 16. In comparison, the average percentage of revenue coming from fines, fees, and forfeitures for cities of similar size (whether between 5,000 and 15,000, or 5,000 and 50,000 residents) was only about 3 percent. Zielke Decl. (Doc. 91-5) ¶¶ 35, 71–72 & Ex. 6a. Nationwide, it was about 1.4 percent. *Id.* Doraville far exceeds these averages.

Looking at revenue per capita tells the same story. In 2018 Doraville collected $188.29 per capita from fines, fees, and forfeitures. Zielke Decl. (Doc.

91-5) ¶ 73. In Georgia cities with populations between 5,000 and 50,000, fines and fees revenues averaged $42.83 per capita. Zielke Decl. (Doc. 91-5) ¶ 73. Nationwide, they averaged $21.09 per capita. *Id*. The average "major" urban area, nationwide, generated $82.15 per capita, leaving Doraville's still more than twice as large. Zielke Decl. *Id*. In sum, Doraville's reliance on fines, fees, and forfeitures is both objectively high and much higher than other cities' reliance on those revenues.

Doraville also argues that there is no conflict of interest because no evidence shows a particular city official deciding a particular case to boost the City's revenue. Def.'s Resp. (Doc. 96) at 9, 18. But, again as Plaintiffs showed in their Response brief, a systemic, institutional conflict of interest can exist even if no particular official acts intending to raise revenues. *See* Pls.' Resp. (Doc. 95) at 13–15. It is immaterial to this case whether any particular Doraville official acts with a bias when deciding a case. As this Court has already held, Plaintiffs' claims do not depend on whether a single official is biased, but instead on "whether Doraville's municipal structure and systemic reliance on fines, fees, and forfeitures creates a potential for biasing City officials sufficient to violate due process." Order Recons. (Doc. 39) at 10 (emphasis omitted). As one federal court recently explained, "it is not necessary for [an official] to have a quota, punishment, or reward associated

with the Fund in order to have a conflict of interest. The significance of these funds for the payment of personnel salaries and other administrative needs . . . is sufficient incentive to act as a 'possible temptation' to the 'average man.'" *Caliste v. Cantrell*, 329 F. Supp. 3d 296, 318 (E.D. La. 2018), *aff'd*, 937 F.3d 525 (5th Cir. 2019). Thus, even where officials "may even have been actuated by the highest motives," financial systems may "result[] in a biased tribunal" violating due process. *Brown v. Vance*, 637 F.2d 272, 281 (5th Cir. 1981).

As Plaintiffs have shown, the same potential for bias exists here. Even if Doraville's officials do not act in a biased manner on an individual case, institutional incentives exist that "result[] in a biased tribunal." *Id.* at 281. Doraville hires municipal court officials, it can remove those officials for any reason, it can cut those officials' pay or benefits, and it can even disband the municipal court. *See* Pls.' Br. (Doc. 91-19) at 13–16. And like the judges whose fee system was struck down in *Brown v. Vance*, Doraville's municipal court judge (as well as its prosecutor and police) potentially retain their employment by "currying favor with" the city council. 637 F.2d at 282.

Doraville's officials must produce revenue; they are aware the City's operations depend on fines, fees, and forfeitures. *See* Pls.' Br. (Doc. 91-19) at 22–25. The City's own summary judgment brief concedes there is a direct connection

11

between law enforcement and city revenues: As a result of fewer law enforcement citations, "municipal court revenue has decreased" in the last three years. Def.'s Br. (Doc. 89-1) at 20–21, 31. Thus, Doraville's budgeting practices create an incentive for the City to hire and retain those officials that produce revenue—even if no single official acts with revenue in mind. *See Brown*, 637 F.2d at 282; Pls.' Br. (Doc. 91-19) at 15–16. These budgeting practices are unconstitutional.

### III.   Plaintiffs Are Entitled to Injunctive Relief.

Doraville argues that Plaintiffs have not satisfied the elements for a permanent injunction.[8] Def.'s Resp. (Doc. 96) at 7–13. Doraville is incorrect.

To obtain a permanent injunction, Plaintiffs must of course "show actual success on the merits." *Hubbard v. Citimortgage Inc*., No. 1:12-CV-03906-RWS, 2013 WL 12101060, at *1 (N.D. Ga. 2013) (quotation omitted). As shown in Part II, above, Plaintiffs' Motion and its Response to Doraville's Motion have established that Doraville's policy and practice of depending on fines and fees violates Plaintiffs' constitutional rights.

---

[8] Doraville also argues that Plaintiffs are not entitled to declaratory relief or nominal damages. Def.'s Resp. (Doc. 96) at 15–16. But this is simply an argument that Plaintiffs should lose on the merits. Doraville's response does not argue that Plaintiffs are not entitled to any relief if they are successful on the merits.

In addition, Plaintiffs must "show (1) that [they have] suffered an irreparable injury; (2) that [their] remedies at law are inadequate; (3) that the balance of hardships weighs in [their] favor; and (4) that a permanent injunction would not disserve the public interest." *Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1229 (11th Cir. 2017). All four elements are present here.

### A.    Plaintiffs face irreparable harm.

Doraville argues that there is no irreparable harm to Plaintiffs because there is no evidence that Doraville will ever ticket Plaintiffs again. Def.'s Resp. (Doc. 96) at 10. But this Court rejected this argument when it dismissed Defendant's Rule 12(b)(1) motion. Order Den'g Mot. Dismiss (Doc. 30) at 8–11. Plaintiff Brucker still has a cracked driveway, Brucker Decl. (Doc. 91-1) ¶ 22, and the City could ticket her at any time, forcing her into a court that has an incentive to convict in order for the City to balance its budget.

### B.    Plaintiffs have no adequate remedies at law.

In this case there are no remedies at law that would provide complete relief to Plaintiffs. Damages alone would not suffice, because Plaintiffs continue to live under Doraville's biased system. Plaintiff Brucker still lives in Doraville and could be cited at any time for her cracked driveway. Brucker Decl. (Doc. 91-1) ¶ 22; *see also* Order Den'g Mot. Dismiss (Doc. 30) at 10–11 (finding Brucker has standing

13

because she "is yet to take action that would inhibit future citations"). Plaintiff Billingsley still commutes to work through Doraville. Billingsley Decl. (Doc. 91-2) ¶¶ 9–10. And Plaintiff Craig actively avoids driving through Doraville. Craig Decl. (Doc. 91-3) ¶¶ 9–11.[9] Damages for past harms would not remedy these ongoing injuries.

### C.   The balance of hardships weighs in Plaintiffs' favor.

The balance of hardships weighs in Plaintiffs' favor: An injunction against balancing the general fund using fines and fees would not affect any other policies or practices of Doraville. Doraville could still ticket, prosecute, and convict violators. Doraville could still collect and report fine income. To the extent that "compliance with the constitutional principle of this case may entail an administrative burden . . . [it] is largely one of [the government's] own making." *Jones v. Governor of Fla*., 950 F.3d 795, 829 (11th Cir. 2020), *rev'd on other grounds*, No. 20-12003, slip op. (11th Cir. Sept. 11, 2020) (en banc). The only hardship it will suffer is the inability to balance its operating expenses using fines and fees income. *See* Pls.' Mot. Summ. J. (Doc. 91) ¶ 5 (requesting injunction of

---

[9] Plaintiff Thornton has moved out of Doraville. Thornton Decl. (Doc. 91-4) ¶ 1.

"Doraville's policy and practice of relying on fines, fees, and forfeitures to balance its budget").

### D.    Enjoining Doraville's practices will serve the public interest.

Finally, a permanent injunction would not disserve the public interest. Enjoining a policy or practice infringing on constitutional rights is always in the public interest. *E.g.*, *D.M. v. Minnesota State High Sch. League*, 917 F.3d 994, 1004 (8th Cir. 2019). Doraville argues that the public interest cannot be served because the City must include a prospective estimate of fines and fees in its budget. Def.'s Resp. (Doc. 96) at 12. But there is no legal requirement that Doraville rely on estimated fines income to balance its operating expenses. Doraville itself testified that it is permitted to budget for less than it ultimately takes in. *See* Gillen Dep. 174:12–17 (excerpt attached to House Decl. Opp. Def.'s Mot., Ex. B (Doc. 96-2)) ("Every City can run a surplus . . . . It would go in a fund balance or reserve, or rainy-day fund. You can call it what you want.").

## CONCLUSION

For those reasons, and for the reasons stated in Plaintiffs' Motion, Plaintiffs request that this Court grant Plaintiffs' Motion; declare unconstitutional and enjoin Doraville's policy and practice of relying on fines, fees, and forfeitures to balance its budget; and award Plaintiffs nominal damages of $1.

15

Dated September 18, 2020

Respectfully submitted,

/s/ Joshua A. House*†                        Frank B. Strickland
California Bar No. 284856                   Georgia Bar No. 687600
Institute for Justice                            Taylor English Duma LLP
901 N. Glebe Road, Suite 900           1600 Parkwood Circle, Suite 200
Arlington, VA 22203                          Atlanta, GA 30339
Tel: (703) 682-9320                           Tel: (770) 434-6868
Fax: (703) 682-9321                          Fax: (770) 434-7376
jhouse@ij.org                                   fstrickland@taylorenglish.com

Anthony Sanders*
Minnesota Bar No. 0387307
Institute for Justice
520 Nicollet Mall, Suite 550
Minneapolis, MN 55402
Tel: (612) 435-3451
Fax: (612) 435-5875
Email: asanders@ij.org

*Admitted pro hac vice
† Lead Counsel

16

## **CERTIFICATE PURSUANT TO LOCAL RULE 7.1(D)**

I certify that the foregoing Brief conforms to the requirements of Local Rules 5.1(C) and 7.1(D). The Brief is prepared in 14 point Times New Roman font.


/s/ Joshua A. House
Institute for Justice
Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of September, 2020, a true and correct copy of the **PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** and its supporting **DECLARATION** and **EXHIBIT** were served with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following counsel of record:

GRAY, RUST, ST. AMAND, MOFFETT & BRIESKE, LLP
Harvey S. Gray
Alex Joseph
1700 Atlanta Plaza
950 E. Paces Ferry Rd.
Atlanta, GA 30326
Tel: (404) 870-7376
Fax: (404) 870-7374
Email: hgray@grsmb.com, ajoseph@grsmb.com


/s/ Joshua A. House
Institute for Justice
Counsel for Plaintiffs

18