IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| HILDA BRUCKER; JEFFERY THORNTON; JANICE CRAIG; and BYRON BILLINGLSEY, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 1:18-cv-02375-RWS |
| | ) | |
| CITY OF DORAVILLE, a Georgia municipal corporation, | ) ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT CITY OF DORAVILLE, GEORGIA'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Comes now the City of Doraville, Georgia ("Doraville"), defendant in the above-styled action, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1 of the Civil Local Rules of this Court, and hereby files its reply brief in support of its motion for summary judgment. The parties have previously filed cross motions for summary judgment and briefs in support thereof, response briefs, statements of undisputed facts and responses to each other's statements of undisputed facts. Doraville submits that the parties have presented their opposing positions adequately for this Court to reach a decision on these pending motions and respectfully submits that its motion for summary judgment should

be sustained and granted and that plaintiffs' motion should be denied.  Plaintiffs

have the burden of proof in this case and have not carried their burden sufficiently

to warrant any of the relief prayed for in the complaint.

In Doraville's initial brief offered in support of its motion (Doc. 89), which

is incorporated by reference herein, a factual and legal analysis of the claims for

relief in plaintiffs' complaint are presented and nothing in the response brief

submitted for plaintiffs provides any basis for denying Doraville's motion.   The

present reply brief will reiterate Doraville's position in summary form,

confirming its contention that the Fourteenth Amendment Substantive Due

Process claims advanced by each plaintiff fail as a matter of law and that plaintiffs

are not entitled to any of the relief prayed for in their complaint, to wit:  $1 in

nominal damages, declaratory and injunctive relief and recovery of plaintiffs' fees

and expenses.

It is important to keep in mind that plaintiffs are individually alleging that

their Fourteenth Amendment Substantive Due Process rights were violated based

on citations issued to each of them on different dates, by different individuals, for

different violations of city code provisions and state traffic laws.  As noted in

Doraville's pleadings, this is not a class action and no claims have been or could

be presented that the constitutional rights of anyone other than plaintiffs have

been or will be violated, based on what plaintiffs refer to as institutional bias arising from Doraville's budgeting for and receipt of municipal court revenue. No direct evidence of any kind has been provided by plaintiffs to support their individual claims for relief. Instead, plaintiffs rely solely on an inference based on their flawed interpretation of undisputed financial records of Doraville.

Evidence has been submitted into the record by Doraville which confirms, beyond dispute, that probable cause existed for each citation issued to each plaintiff. The complete code enforcement files for Brucker and Thornton and the complete files, including dash camera video of the traffic violations committed by Craig and Billingsley, have been tendered into the record. These records confirm beyond dispute that probable cause existed in fact for each citation issued to each plaintiff.

Plaintiffs chose not to depose any of the code enforcement officers or law enforcement officers who issued citations to them to address these officials' motivations in issuing the same, particularly that their decisions to issue said citations were motivated in any regard by Doraville's budgetary expectations for receipt of municipal court revenue. Plaintiffs have presented no evidence that any of these officials were even aware of Doraville's budgetary expectations for receipt of municipal court revenue, much less that their actions were motivated by said

expectations.   Plaintiffs have offered only speculation that any of the public officials who issued citations to them shirked their professional responsibilities and, instead, issued the citations to further the budgetary goals of Doraville.

The same is true as it relates to Doraville's city prosecutor who presented the citations in municipal court and Doraville's municipal court judge who imposed fines for violation of the same.  No direct evidence of any kind exists in this record to confirm that the actions by the city prosecutor or municipal court judge were motivated in any regard by Doraville's budgetary expectations or that either of them were even aware of Doraville's budgetary expectations.

The city prosecutor, William F. Riley, Jr., has submitted an unrebutted affidavit confirming that his prosecutorial discretion to prosecute cases in municipal court was in no manner impacted by Doraville's budgetary goals for receipt of municipal court revenue.  Doraville's municipal court judge, Edward Scott Carter, has likewise submitted an unrebutted affidavit confirming that the exercise of his judicial discretion in ruling on citations and imposing fines was unrelated to any budgetary expectations of Doraville.   He further confirms that he has never,  in the twenty-eight years he has served as Doraville's municipal court judge, made any decisions based on Doraville's budgetary expectations; that he has never reviewed Doraville's budgets; that he has no idea what amount is

budgeted by city council for receipt of municipal court revenues in any given year; and that he does not even know how much revenue is derived from fines, fees and forfeitures imposed and collected in municipal court.

In the municipal court cases involving Craig and Billingsley, each of them entered guilty pleas and paid fines, never once contesting the constitutionality of the traffic citations issued to them or the fines they paid to resolve the same, in municipal court, by direct appeal or by writ of certiorari to superior court. Brucker did not pursue review of her $100 fine for a code enforcement violation; the case against Thornton was dropped and he paid no fine. Neither Brucker nor Thornton raised any constitutional challenge to their citations or fines, in municipal court, by direct appeal or by writ of certiorari to superior court. Plaintiffs' constitutional claims were raised for the first time in the present case with the filing of their complaint in this Court on May 23, 2018.

To support their individual, constitutional claims, plaintiffs rely solely on an inference from Doraville's budgets and audited financial statements from 2008 to 2019, asserting that Doraville's practice of budgeting for receipt of municipal court revenue, derived from fines, fees and forfeitures[1], created an institutional

---

[1] "Fines" are fines imposed in municipal court for violation of city ordinances or traffic statutes. "Fees" relate only to a $25.00 administrative fee per citation

bias which caused code enforcement and law enforcement officials to issue citations to them to meet Doraville's budgetary goals for receipt of municipal court revenue.  The argument continues that Doraville's city prosecutor and municipal court judge prosecuted and adjudicated their individual cases to meet Doraville's budgetary expectations.  There is no evidence in this record to support these allegations and, as such, summary judgment for Doraville is warranted.  Plaintiffs have the burden of proof in this action to establish that the citations issued to them and the adjudication of the same were motivated by institutional bias but have presented no evidence to support such claim.  Plaintiffs' reliance solely on an inference with no evidence to support the same and the existence of unrebutted testimony which refutes the same cannot support their motion for summary judgment nor avoid entry of summary judgment to Doraville.

Unquestionably, Doraville is required by Georgia law to prepare a balanced budget.  (Doc. 87, Platto Deposition, p. 16, lns 9-15).  The largest portion of Doraville's revenue is derived from property taxes; revenue generated through property taxes comprises 78% of the city's budget. (Doc. 87, Platto Depo., p. 98, ln. 23 – p. 99, ln. 4). The goal of the city's budget is to deliver all necessary city services

---

imposed in municipal court. "Forfeitures" refers only to bond forfeitures and not civil forfeitures, as plaintiffs confirm in their brief. (Doc. 91-19, fn. 2).

at the most effective cost; a secondary goal is to have "a transparent document for citizens to see how much it costs to operate a city." (Doc. 87, Platto Depo., p. 98, lns. 4-9).

Plaintiffs were cited for code and traffic violations in 2016 and 2017. They contend that the issuance of the citations issued to them violated their Fourteenth Amendment Substantive Due Process rights because those issuing, prosecuting and adjudicating their citations did so to further Doraville's budgetary goals for municipal court revenue. In addition to seeking recovery of $1 in nominal damages for these actions in 2016-2017, plaintiffs seek injunctive relief to be issued in 2020-2021. The operative period for any analysis of Doraville's budgeting for and receipt of municipal court revenues derived from fines, fees and forfeitures in found in the chart below:

| Fiscal Year | Total Revenues | Fines and Forfeitures | Audit | Budgeted % |
|---|---|---|---|---|
| 2016 | $11,834,052 | $2,180,262 | 18.24% | 19.69% |
| 2017 | $11,349,116 | $1,976,042 | 17.41% | 18.72% |
| 2018 | $12,496,138 | $2,051,582 | 16.42% | 18.12% |
| 2019 | $14,655,362 | $1,701,616 | 11.61% | 13.47% |
| 2020 | $15,255,700 | $1,600,000 | Not Available | 10.49% |
| FYE Avg. 2016-2020 | $13,118,074 | $1,901,100 | 15.92% | 16.1% |

Plaintiffs' efforts to draw conclusions from 2008 forward are misguided. The budgeted percentage of revenue derived from fines, fees and forfeitures in municipal court, expressed as a percentage of total city revenue for 2020 is 10.49%; the average percentage from 2016 forward is 16.1%; and this average has clearly been declining every year since 2016. Despite the absence of any direct evidence to support the proposition that the citations issued to each plaintiff and the adjudication of the same were motivated by institutional bias, the chart above, standing alone, provides no basis on which to find institutional bias as motivation for the issuance and adjudication of the citations issued to plaintiffs in 2016-2017 and also confirms that injunctive relief in 2020-2021 is unwarranted, as discussed further below.

To support plaintiff's substantive due process challenge arising from the citations issued to them and adjudication of the same, it is insufficient to simply allege that the city's municipal court generates revenue that is in turn used to finance the city's costs of operation. *See Waters v. Hollywood Tow Service*, 2010 WL 11465238, at *8-9 (C.D. Cal. 2010). If a challenge based solely on revenue generation could be sustained, most municipal courts would fail. The fact that municipal courts generate financial dividends cannot, in and of itself, violate the Constitution. *Id. See also*, *Commonwealth of the Northern Mariana Islands v. Kaipat*, 94

F.3d 574, 574-575 (9th Cir. 1996) (no due process violation occurs where "the judge had no pecuniary interest in the fine and held no other position that could reasonably warrant a fear of partisan influence on his judgment"); *see also Van Harken v. City of Chicago,* 103 F.3d 1346, 1352-1353 (7th Cir. 1997) (no due process violation occurs where parking citations were reviewed by hearing officers whose compensation did not depend on the outcome of administrative hearings reviewing parking citations, whose job security bore only a "very indirect, very tenuous" connection to their decision-making record, and who had "no other financial stake in the outcome of the cases they adjudicate").

Plaintiffs rely on the Ninth Circuit's decision in *Alpha Epsilon Phi Tau Chapter Hous. v. City of Berkley*, 114 F.3d 840, 844 (9th Cir. 1997) to establish the legal standard for institutional bias as existing where an official "because of his institutional responsibilities, would have '*so strong a motive*' to rule in a way that would aid the institution." (emphasis added). The case discussion continues to provide that the issues are "First, is there a conflict of interest? Second, is the conflict of interest substantial." In *Berkley*, the adjudicating body at issue was the Berkley Rent Board (the "Board"), which, like the mayors in *Tumey* and *Ward*, was vested with a combination of judicial and executive authority and thus served competing roles as "both adjudicator of coverage and executor of its finances."

Thus, a conflict existed in fact in *Berkley* and the only issue was whether the conflict was substantial.  In the present case, there is no conflict of interest, substantial or otherwise, and the undisputed evidence in the record belies any conclusion that a conflict of interest arising from Doraville's budgeting for municipal court revenue was the motivating factor for issuance of citations to each plaintiff which were thereafter adjudicated in municipal court.

I.      ARGUMENT AND CITATION OF AUTHORITY

a.  **Substantive Due Process**

The record is devoid of evidence demonstrating any "realistic possibility" that "the prospect of institutional gain" to Doraville "as a result of zealous enforcement efforts" of traffic laws and city code ordinances amounted to a substantive due process violation of plaintiffs' rights. *Kaipat*, 94 F.3d at 580 (citing *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 248-251 (1980)).  In *Kaipat*, the Ninth Circuit held that the allocation of fines imposed by a commonwealth's judges to a courthouse building fund did not create a constitutionally-intolerable "official motive" or "possible temptation to the average man as a judge" to convict and fine the appellant where the judge who imposed the fine "had no direct, personal, substantial pecuniary interest in reaching a conclusion against [the appellant] in his case." *Kaipat*, 94 F.3d at 580 (quoting *Tumey v. Ohio*, 273 U.S. 510, 523 (1927)).

The Ninth Circuit distinguished *Tumey*, which held that due process was violated by a "fine imposed by [a] mayor-judge whose compensation as a judge was derived from, and whose city coffers—for which he was responsible—largely depended on, revenue from fines," and analogized the case to *Dugan v. Ohio*, 277 U.S. 61 (1928), which held that due process was not violated by a "fine imposed by [a] mayor-judge whose compensation did not come from fines and who had no executive responsibility for city finances." *Kaipat*, 94 F.3d at 574-575; *see Dugan*, 277 U.S. at 65 (holding that *Tumey* did not control because (1) the mayor-judge in *Dugan* had only judicial duties and no executive duties; (2) while his salary was paid from a general fund to which fines levied by his court were allocated, the mayor-judge received fixed compensation that was not dependent on whether he convicted or acquitted; and (3) under the city charter, the mayor-judge's relation to that general fund, "or the executive or financial policy of the city, is remote").

In *Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980), the United States Supreme Court provided guidance on the issue of whether a municipal program violates the Fourteenth Amendment due to an unlawful profit motive. In *Marshall*, the Court upheld a part of the Fair Labor Standards Act allowing the Department of Labor's Employment Standards Administration to impose civil penalties assessed

-11-

for child labor violations. These penalties were used to offset the costs of prosecuting alleged child labor law violations.

The plaintiff in *Marshall* asserted that the Administration's pecuniary interest in the proceeds from penalty assessments created unconstitutional bias by encouraging the prosecution of child labor law violations in an effort to make unduly numerous and very large penalty assessments. The Supreme Court recognized that a scheme injecting a financial interest into the enforcement process could raise constitutional questions (*Id*. at 249-50); however, it determined that the constitutional line had not been crossed, in part because governmental officials did not stand to directly profit economically from vigorous enforcement of the child labor provisions. *Id*. at 250.

Absent evidence that police officers, code enforcement officials, city prosecutors and/or municipal court judges stand to directly benefit economically from prosecuting, adjudicating, and imposing monetary fines, there is "no direct, personal, substantial, pecuniary interest" that would suggest a violation of the due process clause. *U.S. v. Shifflett,* 50 F.3d 9 (4th Cir. 1995); *Cf. Tumey v. Ohio,* 273 U.S. 510, 523 (1927) (due process violation existed where mayor, acting as judicial officer, had "direct pecuniary interest in convicting" defendants under statute that allocated portion of fines to repayment of mayor's fees and costs, above his regular

salary).  The mere fact that government officials might lose their jobs if they failed to meet Doraville's budgetary expectations for municipal court revenue does not change this conclusion and no case holds to the contrary.

No evidence exists nor are any allegations made that the salaries of any city police officers, code enforcement officials, city prosecutors or municipal court judges ever changed depending on the number of citations issued, cases adjudicated, fines imposed, or revenue generated from municipal court.  No evidence exists nor are any allegations made that any city police officers, code enforcement officials, city prosecutors or municipal court judges had any executive authority over Doraville's finances; it is undisputed that none of them served on city council and that none of them ever participated in the budgeting process.  Moreover, no evidence exists to establish that any of them were even aware of Doraville's budgetary expectations for receipt of municipal court revenue, much less that any of them were motivated by any alleged institutional bias in issuing and adjudicating the citations issued to plaintiffs.

### i.  Municipal court judge

"The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases." *Marshall*, 446 U.S. at 242. "This requirement of neutrality in adjudicative proceedings safeguards the two central

concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decision-making process." *Marshall*, 446 U.S. at 242.   Due process does "not permit any procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the state and the accused." *Marshall*, 446 U.S. at 242. *See Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 877-880 (2009) ("Due process requires an objective inquiry into whether the contributor's influence on the election under all the circumstances would offer a possible temptation to the average ... judge to ... lead him not to hold the balance nice, clear and true."); *Ward v. Village of Monroeville*, 409 U.S. 57, 60 (1972). "It is sufficiently clear from our cases that those with substantial pecuniary interest in legal proceedings should not adjudicate these disputes." *Gibson v. Berryhill*, 411 U.S. 564, 579 (1973). *See Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 824 (1986) (concluding that there was a due process violation where an Alabama justice received $30,000.00 from settling a case in which he decided, in a highly similar case, an issue on appeal).

The Supreme Court has recognized several factors that bear on whether a law, procedure, or program unconstitutionally biases an official: (i) whether the

amount of penalties or prosecutions affects an official's salary; (ii) the official's authority over allocating the penalty funds; (iii) the percentage of the budget that the fees and penalties constitute; and (iv) whether surplus funds are allocated to the program or to other programs. *Harjo v. City of Albuquerque*, 326 F.Supp.3d 1145, 1184 (D. New Mexico 2018). *See Marshall*, 446 U.S. at 245-46, 250-41. *See also Ward v. Village of Monroeville*, 409 U.S. 57, 58 (1972), (concluding that a mayor's impartiality was sufficiently compromised to violate due process when a substantial portion of the "village income is derived from the fines, forfeitures, costs, and fees imposed by him in his mayor's court").

This case differs markedly from *Tumey* and *Connally v. Georgia,* 429 U.S. 245 (1977). The judges in both of those cases were assured of financial gain if they favored the government over private citizens and, conversely, received no financial gain if they did not find the defendant as guilty and imposed a fine.  *See Tumey*, 273 U.S. at 523, 531-32 (detailing that a judge received $12.00 per conviction secured); *Connally v. Georgia*, 429 U.S. at 246 (noting that a judge received $5.00 per search warrant issued).

In contrast, Doraville's municipal court judges did not receive any monetary or other benefit from adjudicating any of the plaintiffs herein guilty and/or imposing a fine on them.  The only argument to the contrary, as advanced by

plaintiffs, is that the judge was biased based on fear that he might lose his job if he did not generate enough revenue.  How can this argument prevail when the municipal court judge who adjudicated the plaintiffs' cases was not even aware of Doraville's budgetary expectation for municipal court revenue?  The question answers itself.  In any event, Georgia law expressly provides that municipal court judges may not be considered for removal unless it is for cause which "adversely affects the administration of the office of the judge and the rights and interests of the public," and may only be removed by a two-thirds vote of city council following notice and a public hearing. (Although local ordinances may provide otherwise, the "provisions of this Code Section shall expressly supersede any conflicting local law of this state." (O.C.G.A. § 36-32-2.1(h)). (O.C.G.A. § 36-32-2.1(a); O.C.G.A. § 36-32-2.1(c); Carter Affidavit).

Revenue generated in municipal court is not earmarked for use by the municipal court and is instead deposited into the city's general fund.  A decrease in municipal court revenue has no effect on the judge's salary.  Awareness of the importance of court-generated revenue does not, on its own, nullify a presumption of neutrality.  Judicial officers are often aware of and tasked with deciding issues affecting important sources of governmental revenue, but the presumption of neutrality is not disturbed there. S*ee, e.g., Gurley v. Rhoden*, 421 U.S. 200 (1975)

(adjudicating to whom the federal excise tax on gasoline applied). *United States v. Equitable Life Assurance Society of the United States*, 384 U.S. 323, 324-27 (1966) (holding that a federal tax lien is superior to a state tax lien).

### ii. Municipal court prosecutor

The test for impartiality is less strict when the official performing the duty "act[s] in a prosecutorial or plaintiff-like capacity." *Marshall*, 446 U.S. at 248.

> Our legal system has traditionally accorded wide discretion to criminal prosecutors in the enforcement process, and similar considerations have been found applicable to administrative prosecutors as well.... In an adversary system, they are necessarily permitted to be zealous in their enforcement of the law. The constitutional interests in accurate finding of facts and application of law, and in preserving a fair and open process for decision, are not to the same degree implicated if it is the prosecutor, and not the judge, who is offered an incentive for securing civil penalties.

*Marshall*, 446 U.S. at 248-49 (internal citations omitted). Although providing a lower standard, the due process clause still imposes "limits on the partisanship of administrative prosecutors." *Marshall*, 446 U.S. at 249. "A scheme injecting a personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision and in some contexts raise serious constitutional questions." *Marshall*, 446 U.S. at 249-50. Such personal interest can take the form of economic profit or "the prospect of

institutional gain as a result of zealous enforcement efforts." *Marshall*, 446 U.S. at 250.

It is undisputed that Doraville's municipal court prosecutor does not receive and has never received any direct financial benefit from the collection of municipal court revenue.  As confirmed in his unrebutted affidavit, Doraville's municipal court prosecutor does not participate in the preparation of budgets for the city; he has no knowledge of the city's budget or budgeting process; neither the city council nor the city manager ever provided direction to him how to perform his duties; and he makes sentencing recommendations and extends plea agreements in cases based entirely on the evidence in each case and the existence of probable cause.  Most importantly, he confirms that his prosecutorial discretion is in no manner affected by the city's budgetary expectations.

### iii.  Law enforcement officers and code enforcement officers

Only a conscience-shocking abuse of government power can give rise to a substantive due process claim. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998). "Nothing about the issuance of a parking ticket implicates the rarely-used doctrine of substantive due process." *Kelly v. Rice,* 375 F.Supp.2d 203, 209 (S.D.N.Y.2005). To detect a cognizable constitutional claim from the mere temporary deprivation of $73 "would trivialize the centuries-old principle of due

process of law." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

In the present case, it is undisputed that the city's law enforcement officers and its code enforcement officers do not derive any financial benefit or any direct or indirect incentives of any kind based on the number of citations issued or the amount of municipal court revenue arising from the same. (Doc. 87, Platto Depo., p. 36, lns. 12-19; Doc. 89-4, Edinger Affidavit; Doc. Doc. 89-16, King Affidavit). There likewise exists no evidence that any of the city's law enforcement or code enforcement officers who issued citations to these plaintiffs were even aware of Doraville's budgetary expectations for receipt of municipal court revenue.

**b. <u>Plaintiffs are not entitled to injunctive relief.</u>**

Plaintiffs' prayers for injunctive relief fail because plaintiffs have not and cannot establish their entitlement to permanent injunctive relief, particularly in the context of a summary judgment motion. As noted by this Court in *Hubbard v. Citimortgage, Inc.*, 2013 WL 12101060 at *1 (N.D. Ga. 2013) (Story, J.) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008)):

> The standard for granting a permanent injunction is essentially the same as for granting a preliminary injunction, the difference being that the moving party must show actual success on the merits instead of a likelihood of success when moving for a permanent injunction.

The elements necessary to support entry of a preliminary injunction are also identified in *Hubbard*, as follows:

> (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party, and (4) that if issued the injunction would not be adverse to the public interest.

*Id.* (quoting *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp.*, Inc., 887 F.2d 1535, 1537 (11th Cir. 1989)).

As to element 1, Doraville respectfully submits that plaintiffs have not met their burden of demonstrating actual success on the merits.   Plaintiffs' entire case is based solely on an inference they seek to draw from undisputed financial records.   Their argument is simply that the total amount of fines, fees and forfeitures budgeted for and received by the city from municipal court, expressed as a percentage of total revenues, is too high. They do not articulate what percentage is too high nor do they provide any case law support to assess what percentage would cross the constitutional line.   Their argument on this issue also fails to account for the fact that no public official involved in the citations issued to plaintiffs was aware of Doraville's budgetary projections, much less that they issued citations to plaintiffs and adjudicated the same based on such issues.

Moreover, although they are seeking an injunction in 2020 based on what they argue is irreparable harm if an injunction does not issue, they avoid

discussing the significant and continuing decline in municipal court revenue that has been occurring over the last several years and, at present, stands at 10.49%. Plaintiffs' expert never offers an opinion that this percentage creates any alleged institutional bias.  Moreover, plaintiffs' expert witness bases her conclusions about the amount of Doraville's municipal court revenue expressed as a percentage of the city's total revenue by comparing Doraville to other cities based on one common denominator, cities with populations between 5,000 to 15,000 persons. She completely ignores what she identifies as comparable cities, each such city's location, traffic patterns, access to interstate highways and a multitude of factors unique to Doraville, as expressed in the affidavit for Michael Brown, submitted by Doraville. (Doc. 89-2, -3)

As to element 2, plaintiffs fail to demonstrate "irreparable injury" if an injunction does not issue, as required by law. The date on which this Court must consider whether to issue an injunction is the date when the injunction is to be issued, presumably in 2020 or 2021, and is the same date when this Court must assess whether irreparable harm will ensue if an injunction is not granted. The entire premise on which this case is founded, though misguided when the case was filed, is now more misguided than ever.  As noted in the chart on page 7 above, municipal court revenue is currently 10.49% of total city revenue.  No evidence

exists, even from plaintiff's expert witness, that this percentage relationship is excessive or creates institutional bias.

Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).  Logically, "a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past." *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994). Although "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury," *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974), "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief … if unaccompanied by any continuing, present adverse effects." *Lyons*, 461 U.S. at 102 (alterations in original) (quoting *O'Shea*, 414 U.S. at 496).  Obviously, no citations have been issued to any of these plaintiffs in the past four years and there is no present prospect that any citations will be issued to them, to generate revenue for the city.  The lack of irreparable harm is fatal to the prayer for injunctive relief.

Finally, elements 3 and 4 are also lacking in this case. Element 3 requires that "the threatened injury to the movant *outweighs* whatever damage the proposed

injunction may cause the opposing party." (emphasis added).  If this Court were to grant an injunction, particularly as identified in the proposed order submitted with plaintiffs' motion (Doc. 91-17), the harm to Doraville would far exceed the fanciful and speculative future harm identified by the plaintiffs, who are the only persons alleging their entitlement to injunctive relief to prevent irreparable harm to them, not to anyone else.

As noted, Doraville is required by law to prepare a balanced budget under O.C.G.A. § 36-81-3(b)(1).[2]  The proposed order for injunctive relief provided by plaintiffs with their motion (Doc. 91-17) provides that "IT IS FURTHER ORDERED that Defendant City of Doraville is ENJOINED from balancing its general fund budget using fines, fees, and forfeitures revenues." Such an injunction would require Doraville to violate state law and would prohibit Doraville from preparing a balanced budget.  Budgets must be based on historical experience to provide an accurate forecast of revenue and expenses.  How could Doraville comply with its legal obligations to prepare a budget subject to an injunction which provides no guidance or details on how its budget should account for revenues from fines, fees

---

[2] Under O.C.G.A. § 36-81-5(b): "The budget document, at a minimum, shall provide, for the appropriate budget period, a statement of the amount budgeted for anticipated revenues by source and the amount budgeted for expenditures at the legal level of control."

and forfeitures?  Would Doraville police officers and code enforcement officers be enjoined from issuing citations after a certain number of citations had been issued, in a given week, month or year?  Would Doraville's city prosecutor be enjoined from prosecuting cases in municipal court once municipal court revenue exceeds a certain amount?  Would Doraville's municipal court judge be prohibited from imposing fines for violations of city ordinances or traffic laws after municipal court revenue exceeds a certain amount?

Not only is Doraville required by law to budget for anticipated revenue, preventing Doraville from doing so would impede the city's basic ability to function and to provide essential governmental services to its residents.  As such, the injunction sought by plaintiffs would adversely affect the public interest, as noted in element 4.  The goal of a budget is to identify sources of revenue expected to be received in order to deliver necessary services to the city's residents at an effective cost; a secondary goal is to have "a transparent document for citizens to see how much it costs to operate a city." (Doc. 87, p. 98, lns. 4-9).  A city—just like a business—must be able to accurately forecast revenue in order to operate. If the injunction as proposed by plaintiffs is issued, it would severely impact Doraville's ability to deliver city services to its residents and would not serve the public interest.

### c.  **Plaintiffs are not entitled to declaratory relief.**

Declaratory relief is not appropriate here because plaintiffs fail to establish a cognizable violation of any constitutional right which would entitle them to declaratory relief.  In order to receive declaratory relief a plaintiff must establish: "(1) a violation, (2) a serious risk of continuing irreparable injury if the relief is not granted, and (3) the absence of an adequate remedy at law." *See Sibley v. David M. Gersten, et al.*, No. 00-15833 (11th Cir. 2001) (quoting *Bolin v. Story*, 225 F.3d 1234 (11th Cir. 2000)).  No evidence exists to support the grant of declaratory relief and it is respectfully submitted that Doraville's motion for summary judgment on this issue should be granted.

### d.  **Plaintiffs are not entitled to nominal damages.**

For the reasons identified above, Doraville is also entitled to summary judgment with respect to plaintiffs' prayer for $1 in nominal damages.  Plaintiffs bear the burden of proof to establish their entitlement to damages by proving that their constitutional rights have been violated. They have not carried their burden in this case.  Additionally, their claim for recovery of damages necessarily implies the invalidity of their convictions and guilty pleas, which convictions and pleas have never been overturned, set aside or expunged.  Moreover, no constitutional claims were ever raised in municipal court, on appeal, by writ of certiorari or

otherwise, and were first raised in the present case.  And, most importantly, plaintiffs have not established that the issuance of citations to them or their adjudication thereafter violated their substantive due process rights.

## II.   <u>CONCLUSION</u>

For all the reasons discussed above, Doraville prays that the grounds of its motion be inquired into and that said motion be sustained and granted; that summary judgment be entered in its favor with regard to all claims asserted against it herein, with all costs cast against plaintiff; and that Doraville have such other and further relief as this Court deems just and proper in the circumstances.

The undersigned, in accordance with L.R. 7.1 and 5.1 hereby certifies that the type-font used herein is 13-Point Books Antiqua font.

This 18th day of September, 2020.

/s/Harvey S. Gray
Harvey S. Gray
Georgia Bar No. 305838
Alex Joseph
Georgia Bar No. 590921
*Attorneys for Defendant City of Doraville, Georgia*

GRAY, RUST, ST. AMAND, MOFFETT & BRIESKE, L.L.P.
1700 Atlanta Plaza
950 East Paces Ferry Road
Atlanta, GA  30326
(404) 870-7376 (Gray)

(404) 870-7389 (Joseph)
(404) 870-7374 (Fax)
hgray@grsmb.com
ajoseph@grsmb.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this date electronically filed the foregoing **DEFENDANT CITY OF DORAVILLE, GEORGIA'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to all counsel of record in this action.

This 18th day of September, 2020.

/s/ Harvey S. Gray
Harvey S. Gray
Georgia Bar No. 305838
Alex Joseph
Georgia Bar No. 590921
*Attorneys for Defendant City of Doraville, Georgia*

GRAY, RUST, ST. AMAND, MOFFETT & BRIESKE, L.L.P.
1700 Atlanta Plaza
950 East Paces Ferry Road
Atlanta, GA  30326
(404) 870-7376 (Gray)
(404) 870-7389 (Joseph)
(404) 870-7374 (Fax)
hgray@grsmb.com
ajoseph@grsmb.com